**BANKERS LIFE COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 10–287–C–1.

United States District Court, S. D. Iowa, C. D.

April 29, 1976.

Walter R. Brown, Bruce B. Graves, Swift, Brown & Winick, Des Moines, Iowa, for plaintiff.

Allen L. Donielson, U. S. Atty., S. D. Iowa, Des Moines, Iowa, Herbert Grossman, Tax Div., Washington, D. C., Justice Dept., for defendant.

## OPINION AND ORDER

STUART, District Judge.

This is another round in the continuing controversy between the Commissioner of Internal Revenue and the life insurance industry over the proper method of computing a company's income tax liability under the Life Insurance Company Income Tax Act of 1959. 26 U.S.C. §§ 801–820.

The plaintiff, Bankers Life Company, is a mutual life insurance company incorporated under the laws of the State of Iowa. After audit of its income tax returns for the years

1959 through 1964, plaintiff paid the additional taxes assessed and filed a claim for refund of a portion thereof. The claims for refund were denied and plaintiff instituted this action claiming the wrongful disallowance of its claim by the District Director. It seeks to recover $785,509 in taxes paid plus the interest assessed thereon with statutory interest. Jurisdiction is founded upon 28 U.S.C. § 1346(a)(1).

Bankers Life is engaged in the life insurance business as defined in 26 U.S.C. § 801(a) and is subject to federal income tax under 26 U.S.C. §§ 801–820. Its operations and accounts are under the supervision and approval of the Commissioner of Insurance for the State of Iowa. It is licensed to do business in all 50 states and files a uniform annual statement with the insurance department of each state on a blank form prescribed by the National Association of Insurance Commissioners (NAIC).

These annual statements are audited every year by the Iowa Insurance Department for the purpose of issuing an annual certificate of authority to do business in Iowa. The NAIC conducts an audit every third year. Annual statements must be completed in accordance with the NAIC instructions and the requirements of the Iowa Insurance Department. Bankers Life statements were so filed. The tax returns filed by Bankers Life were prepared on the same basis as the NAIC annual statements (with some adjustments).

Since 1959 a life insurance company has been subject to income tax on that portion of its premium and investment income which represents profit to the company legally available for distribution to policyholders or stockholders. Under section 802(b) taxable income is computed on a three-phase approach; the first is based on a company's investment income, the second on the excess of operating income over investment income, and the third on the amounts subtracted from the policyholders' surplus account for the taxable year. Only Phase I applies to Bankers Life in the years here involved.

The Phase I approach is set forth in sections 804 and 805. Under these sections, the company's taxable investment income is determined by dividing each item of investment yield (tax exempt or not) between the company and the policyholder reserves. The investment income attributable to reserves which the company must maintain under state law to meet future policy obligations is not subject to income tax. Such income belongs to the policyholder, not the insurance company.

To arrive at taxable investment income under Phase I, the ordinary expenses chargeable against investment income are deducted from the gross investment income to determine the investment yield. The policyholders' share of investment yield is then deducted and the remainder is the taxable investment income.

The policyholders' share of the investment yield is computed by dividing the "policy and other contract liability requirements" by the investment yield to obtain a percentage figure which in turn is applied to each item of investment yield.

The problem here arises in connection with the computation of "policy and other contract liability requirements".[1] The only element of that computation in issue here is "current earnings rate". It is computed by dividing the investment yield by the "mean of the taxpayer's assets at the beginning and end of the taxable year." The greater the assets, the lower the current rate of earnings. The lower the current rate of earnings, the smaller the contract liability requirements. Therefore, if the assets are increased, the policyholders' share of the investment yield is less and the company's share of investment yield is more and a higher percentage of the investment income is subject to tax. Thus, it is in the taxpayer's interest to keep the asset element of the formula as low as possible. Assets are defined as:

---

1. The formula for computing policy and other contract liability requirements can be extracted from section 805.

*  *  *  all assets of the company (including nonadmitted assets), other than real and personal property (excluding money) used by it in carrying on an insurance trade or business.

26 U.S.C. § 805(b)(4).

This definition will be used throughout the opinion as Bankers Life's propositions are all directed toward excluding certain items from the definition of assets for the purpose of computing current earnings rate. Plaintiff's claim for refund is based on the following propositions:

I. Loading on deferred and uncollected premiums and due and unpaid premiums is an asset used by plaintiff in carrying on its insurance business and is therefore excludable from the earnings rate calculations required by section 805.

II. Agents' Debit Balances are assets used by plaintiff in carrying on its insurance business and are therefore excludable from earnings rate calculations required by section 805.

III. Escrow funds collected by plaintiff from mortgagors to enable plaintiff to pay the mortgagors' real estate taxes and hazard insurance when due are not assets of the plaintiff and are therefore excludable from the earnings rate calculations required under 26 U.S.C. § 805.

### I.  Due and Deferred Premiums

The premium on an insurance policy is the agreed price paid by the insured to the insurance company for assuring and carrying a particular risk. The "gross premium" is the amount actually charged to the insured. The gross premium can be broken down into two components, the "net valuation premium" and "loading". The "net valuation premium" is that amount, which, using recognized mortality tables and the interest rate assumed for the policy, will be exactly sufficient to provide the benefits of the policy on maturity. The net valuation portion of the annual premium is added to the policy reserve each year. "Loading" is the portion of the gross premium remaining after the net valuation premium has been computed. It is used by the insurance company to cover costs of carrying the insurance and represents amounts charged to policyholders for acquisition, management, operating expenses, profits, and dividends.

Policyholders are given the option of paying their premiums in annual, semi-annual, quarterly or monthly installments. If the insured elects to pay premiums other than annually, some portion of the premium will fall due between December 31 of each calendar year and the anniversary date of the policy. However, the State of Iowa and the NAIC require life insurance companies to compute their reserve liability on the assumption that an annual premium was paid in advance on the last anniversary of each policy. Thus, the reserve in the annual statement is larger than would be required by the premiums actually paid or legally collectible at the end of the calendar year. Such unpaid premiums are called "deferred and uncollected premiums".

State law also requires that policies include a 31 day grace period for the payment of premiums after their due date during which the policy remains in full force and effect. On December 31 of each year, the grace period will not have expired on some policies on which premiums are due but unpaid. The law requires the reserves to cover liability under these policies. Such unpaid premiums are called "due and unpaid premiums". As deferred and uncollected premiums and due and unpaid premiums are treated the same by the government and the taxpayer for our purposes here, they will be discussed together and will be referred to as "due and deferred premiums".

As the net valuation portion of the due and deferred premiums must be included as part of the policy reserves on the liability side of the company's balance sheet when the gross premium has not been paid, the company surplus would be reduced by the amount included in the reserve for such premiums unless a counter-balancing entry is made on the asset side of the balance sheet. NAIC requires its forms to show the *net* due and deferred premiums as an asset.

As this is the same amount as is added to the reserve, the surplus is not affected.

The government, for the purpose of determining taxable investment income under Phase I requires that the *gross* due and deferred premiums be included as an asset in the computation of current rate of earnings. As stated earlier the ultimate effect of an increase in assets is to increase the investment income taxable to the company under the section 805 formula.

Four circuits have held that under generally accepted accounting principles the gross due and deferred premiums are properly accruable as assets. *Western & Southern Life Ins. Co. v. Commissioner* (6th Cir., 1972), 460 F.2d 8; *Western Nat'l. Life Ins. Co. v. Commissioner* (5th Cir., 1970), 432 F.2d 298; *Jefferson Standard Life Ins. Co. v. United States* (4th Cir., 1969), 408 F.2d 842; *Franklin Life Ins. Co. v. United States* (7th Cir., 1968), 399 F.2d 757. However, the Tenth Circuit in the latest opinion on the subject has held that no portion of these premiums should be listed as assets. *Standard Life & Acc. Ins. Co. v. Commissioner* (10th Cir., 1975), 525 F.2d 786. As Bankers Life concedes gross due and deferred premiums are properly accruable as assets, the Court need not consider these divergent views.

The company concedes that the cases cited above correctly hold that the gross due and deferred premiums are to be listed as assets. The government agrees. The narrow issue before the Court is whether the loading portion of such premiums is an asset "used by [the company] in carrying on an insurance trade or business" within the meaning of section 805(b)(4) and is excludable from the earnings rate calculation.

The Court finds that most of the loading is an asset used in the insurance business and is excludable from the earning rate calculation. This result is contrary to that reached by the four Circuit Courts of Appeals cited above. The Court has arrived at this different result after considerable hesitation and with great reluctance, particularly in view of the Eighth Circuit's long established position that "uniformity of decision among the circuits is vitally important on issues concerning the administration of the tax laws." *North American Life & Cas. Co. v. Commissioner* (8th Cir., 1976), 533 F.2d 1046, at 1051. The Court has done so because of a strong conviction that the narrow issue referred to above has not been discussed or seriously considered by any court.

This is surprising because legal scholars anticipated that Treasury Regulation 1.805–5(a)(4)(i) and (ii), requiring gross due and deferred premiums to be included as assets in computing current earnings rate, would be challenged by litigation.

Denney, Rua and Schoen, in their text, Federal Income Taxation of Insurance Companies (2d Ed., 1966) p. 6–20 states:

> Certain other items ordinarily appearing on a life insurance company's annual statement may be excludable from the term 'assets' in determining the earnings rate. Such items as * * * life insurance premiums * * * deferred and uncollected * * * and agents debit balances all arise from the operations of the insurance business and have no connection with the earning of interest, dividends, rents or royalties. It would seem that these should be excludable from the term 'assets'. However, in view of the Treasury's position to the effect that they must be included, litigation may be necessary to clarify the point.

See also: T. Nash, Federal Income Taxation of Life Insurance Companies § 16.07, p. 16–5 (1974).

Although the issue has been raised in some cases, for one reason or another it has never reached the point of specific discussion or decision. The only case found which contains any discussion bearing on this particular issue is *Western Nat'l. Life Ins. Co. v. Commissioner* (1969), 51 T.C. 824. The court states in dictum:

> Inasmuch as the fictitious assets 'deferred and uncollected premiums'; and 'due and unpaid premiums' are not assets used by the company in carrying on its

insurance business, it would seem that these 'assets' must be included in the computation used in finding the company's current rate, even though they are not real assets and could not possibly be used to produce investment income. *Id.* at 826.

However, the court there was speaking of the *net* due and deferred premiums included under NAIC to offset the reserve entry. Concerning the loading portion of such premiums, the court said:

Furthermore, if the loading factor must be considered an accrued asset under the assumptions indulged in, we doubt that it would be an asset other than property used by it in carrying on an insurance trade or business under the definition contained in section 805(b)(4). *Id.* at 829.

By definition, most of the loading portion of these premiums, when and if collected, will be used to defray the expense of doing business as an insurance company. The government does not claim otherwise but claims the loading is not an excludable asset under the statute and relies on (1) the Treasury Regulation (1.805–5(a)(4)(i) and (ii)) which specifically exclude due and deferred premiums, (2) two trial court cases which are cited as holding contrary to plaintiff's contention, and (3) the circuit court cases cited above which held gross due and deferred premiums must be included in the calculation of current rate of earnings.

In spite of taxpayer's concession that trial courts (*Bankers Union Life Ins. Co. v. Commissioner* (1974), 62 T.C. 661 and *Southwestern Life Ins. Co. v. United States* (1975), 1975–1 USTC ¶ 9321) have rendered decisions adverse to it on this issue, the Court believes it has conceded too much.

In *Bankers Union*, in which the tax court retreated from its previous position that loading on due and deferred premiums should not be accrued as an asset in view of the four circuit decisions cited above, the Court pointed out that an argument had been advanced that such loading was an asset used in the insurance business and said:

While the Courts of Appeals have not mentioned these arguments in their opinions, attention was directed to these arguments * * * [in three tax court opinions] and we assume consideration has been given to them by the Courts of Appeals. *Bankers Union Life Ins. Co. v. Commissioner,* supra, at 676.

There was no discussion of the statute, regulations or congressional intent and no reasons given why loading should not be excluded as an asset used in the insurance business. The Court merely assumed the circuits had decided the issue adverse to the taxpayer and acquiesced.

In *Southwestern Life Ins. Co. v. United States,* supra, the parties agreed the court should decide that the loading on due and deferred premiums must be included as assets in the computation to determine current rate of earning in accordance with the Fifth Circuit opinion in *Western Nat'l. Life Ins. Co. v. Commissioner,* supra.

This case also involved due and unpaid premiums on health and accident policies and the court determined they were not property, as the taxpayer had no legal right to collect them. They were not included as assets. The Court distinguished them from life insurance due and unpaid premiums because: "No life insurance reserves are maintained or established as a result of the due and uncollected premiums on accident and health policies." *Southwestern Life Ins. Co. v. United States,* supra, at 86,742.

That court also applied Treasury Regulation 1.805–5(a)(4)(i) to certain items in issue (not loading) without questioning the propriety of limiting insurance business assets to tangible assets.

The Court has been unable to find any specific holding in *Southwestern Life* necessarily contrary to plaintiff's position.

As the Court states in *Bankers Union* and as the government argues, by deciding "squarely that the full gross due and deferred premiums are includable within the meaning of 'assets' under section 805(b)(4) and that section, by its own terms, excludes from 'assets' property used in 'carrying on an insurance trade or business'", the

Fourth, Fifth, Sixth, and Seventh Circuits have, in effect, held that the loading is not an asset used in the insurance business within the meaning of section 805. However, there is no indication in any of the opinions that the argument advanced here was considered in reaching the decisions.

In *Franklin Life*, the Seventh Circuit reversed the district court which had given governing effect to the NAIC rule which allowed the *net* valuation premium to be accrued as an asset. The court stressed generally accepted accrual accounting principles and held that after the setting up of a reserve for the net valuation of due and deferred premiums such principles will not permit accrual of the entire annual reserve on one hand without incident accrual of the full annual premium. The Court pointed out that a numerical offset does not fully account for the related asset and would "modify the substantive provisions of a tax formula concerned with the *proportionate* relationship between assets and reserves". *Franklin Life Ins. Co. v. United States*, supra, at 760–61.

In *Jefferson Standard Life* the Fourth Circuit followed the *Franklin* case and adopted its reasoning and required gross due and deferred premiums to be included as assets under the section 805 formula. *Jefferson Standard Life Ins. Co. v. United States*, supra, at 856.

In *Western Nat'l. Life Ins. Co. v. Commissioner*, supra, the Fifth Circuit agreed with the Fourth and Seventh saying:

> An accrual method of accounting would not require the inclusion of any part of these deferred and uncollected premiums. However, when the taxpayer does accrue them, we are of the view that they must be accrued in full, even though advantage of only a part of them can be used by the taxpayer in the formula that is used for determining the base of taxation. *Id.* at 302.

The Sixth Circuit followed the three other circuits in *Western & Southern Life Ins. Co. v. Commissioner*, supra, but also found support for the commissioner from the Treasury Regulation 1.805–5(a)(4)(ii) example hereinafter set out.

The Court believes that the arguments advanced by Bankers Life have never been fully explored. The statute and regulation have not been analyzed. Congressional intent as to the meaning of assets used in the insurance business has not been ascertained. Therefore this task has now fallen upon this Court.

Bankers Life argues that Treasury Regulations 1.805–5(a)(4)(i) and (ii) are not inconsistent with its position *if* the regulation is construed to refer to *net* due and deferred premiums. This, of course, would be true, but in the Court's opinion such interpretation of the regulation is not possible. There is nothing in the regulation, the actions of the Commissioner under it, or in court decisions which would lend the slightest support to such construction. In the Court's opinion, the regulation clearly requires gross due and deferred premiums to be included as assets in the section 805 formula.

As Treasury Regulations must be sustained unless they are unreasonable and plainly inconsistent with the underlying statute, *Commissioner v. South Texas Lumber Co.* (1948), 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831, 836; *Standard Life & Acc. Ins. Co. v. Commissioner* (10th Cir., 1975), 525 F.2d 786, 789; *McMartin Industries, Inc. v. Vinal* (8th Cir., 1971), 441 F.2d 1274, 1275; *Whattoff v. U. S.* (8th Cir., 1966), 355 F.2d 473, 478, attention will be directed toward determining congressional intent and purpose and deciding whether Treasury Regulation § 1.805–5(a)(4) is reasonably aimed at carrying out that intent.

The pertinent parts of 26 U.S.C. § 805(b)(4) provides:

> *(4) Assets.*—For purposes of this part, the term 'assets' means all assets of the company (including nonadmitted assets), *other than real and personal property (excluding money) used by it in carrying on an insurance trade or business.* (Emphasis supplied)

Treasury Regulation, section 1.805–5(a)(4)(i), after repeating the definition of

assets contained in the statute and listing the various items which are to be included in the term "money", continues:

The following items are the only ones to be excluded from the term 'assets' as being considered 'used by the life insurance company in carrying on an insurance trade or business'.

[(a) building and land owned and occupied by the life insurance company,

(b) furniture and equipment owned and used by the life insurance company,

(c) supplies, stationery, and printed matter used in life insurance company offices,

(d) automobiles, and other depreciable personal property used in the operation of a life insurance company.]

Subsection (ii) of section 1.805–5(a)(4), which gives examples to illustrate the principles set forth in subsection (i), states:

Accordingly, since bonds, stocks, mortgages, agents' debit balances, *premiums deferred and uncollected and premiums due and unpaid* * * * are not considered as being used by P in carrying on an insurance trade or business, they are included within the term 'assets' and, therefore, shall be taken into account by P in determining its current earnings rate. (Emphasis supplied)

As there is no dispute between the parties over the inclusion of gross due and deferred premiums as assets, the question is the interpretation of the statutory exclusion of assets used to carry on an insurance business. The Court has been unable to find any indication that Congress intended to limit the exclusion to tangible assets, which is the effect of Treasury Regulation 1.805–5(a)(4)(i). If this had been the intention, Congress could have said so plainly and simply.

In section 817, relating to capital gains and losses, Congress said:

(1) in applying section 1231(a), the term 'property used in the trade or business' shall be treated as including only—

(A) property used in carrying on an insurance business, of a character which is subject to the allowance for depreciation * * *.

This illustrates that Congress specifically limited the kind of assets to be included when it desired to do so. Section 805 speaks of "all assets of the company". The exclusion refers to "real and personal property (excluding money)". The specific reference to "money" negatives any thought that Congress intended such language to be limited to tangible personal property. In fact, the exclusion of "money" from trade or business assets indicates that all intangible assets, but money, used in the business should not be included in computing the current earnings rate. The Court holds that Treasury Regulation 1.805–5(a)(4)(i) limiting insurance business assets to the tangible assets specified is contrary to section 805(b)(4) and is therefore invalid.

Regulation 1.805–5(a)(4)(ii) specifically requires due and deferred premiums to be taken into consideration in determining current earnings rate. If intangible assets used in the insurance business are to be excluded from the current earnings rate computation, is there some reason why an exception should be made of the loading portion of due and deferred premiums? The complications arise from the nature of the "asset" itself. In reality, such premiums are not an asset but a valuation item included in the balance sheet to offset the amount of due and deferred premiums that companies are legally required to include in the policyholders' reserve. The "asset" will disappear during the year as installment premiums are paid or policies are permitted to lapse. A new "asset" will be created at the end of the year for balance sheet purposes.

Due and deferred premiums are a fictionalized asset that must be created to avoid a severe distortion of the reserve-asset ratio. But once the fiction has been indulged in, it would seem that it should be carried through and the fact recognized that most of the loading portion of such premiums,

when received, will be used in carrying on the insurance business.

The Court has received some encouragement for its treatment of loading on due and deferred premiums under Phase I of life insurance income taxation from the very recent Eighth Circuit case, *North American Life & Cas. Co. v. Commissioner,* supra. It involves Phase II, § 809, taxation and considers whether, under accrual methods of accounting applicable to life insurance companies, agents estimated future commissions on due and deferred premiums were deductible expenses. Due and deferred premiums were accrued as income. The government argued there were too many contingencies to allow such commissions as a deduction. The Court, while recognizing the cases disallowed "loading" as a deduction, held this particular part of the loading was a deductible expense saying:

> Thus, having accepted the fiction that deferred and unreceived premiums are fully received at the start of the policy year—a fiction offset to a considerable extent by accruing the liability of the net valuation reserve—the commission expense, which is certainly part of the legitimate cost of securing the deferred premiums, should be accorded like treatment unless there is a legal or statutory bar to doing so. Once the contingency of premium collectibility is ignored on the income side of the transaction, that same contingency should be ignored for purposes of deducting directly related expenses such as agents' commissions. *Id.* at 1050.

Reasoning similar to that which has caused the Court to decide as it does here is expressed thusly by the Circuit Court:

> The Commissioner cannot reasonably or logically contend that Congress intended to disregard traditional accrual principles in requiring deferred premiums to be included in taxpayer's income while also contending that adherence to such principles is required to deny taxpayer a deduction for commission expenses directly tied to the same income. *Id.* at 1052.

It is this Court's position that it cannot logically be contended that Congress, which contemplated that gross due and deferred premiums would be listed as an asset, intended to deny the taxpayer the right to exclude that portion of the due and deferred premiums which is to be used in the insurance trade or business.

Theoretically, and in all probability actually, the loading portion of due and deferred premiums includes some margin above actual expenses for profit. This margin would not be used in carrying on the insurance business and should not be excludable from assets for that reason. The amount of this margin should be identified and included as an asset for the computation of current earnings rate.

The government argues that the ratio of reserve to assets is distorted if a numerically equal sum is added to the numerator and denominator. It is true, of course, in all instances in which the ratio is other than one to one, that the ratio will change by such action, but it is a distortion only if it is assumed that the pre-existing ratio was the proper one. In other words, the government takes the position that the current earnings rate is to be based on the ratio between reserves and assets without consideration of due and deferred premiums. The government argues that gross, rather than net, due and deferred premiums must be included as an asset in the calculation as this helps preserve this pre-existing ratio.

Although the government's claim, that the industry-wide ratio of assets to reserves is roughly equal to the ratio of gross premiums to net premiums, may be correct, it is merely a happenstance and not because of any particular relationship between the two items. In addition, such claim might not hold true for the individual company. The industry-wide basis for tax computations was abandoned in the 1959 tax law.

In the Court's opinion, the concept that a pre-existing ratio of assets to reserves should be maintained when due and deferred premiums are considered is the wrong approach to the statute. The equa-

tion or formula is for the purpose of finding the proper ratio, including due and deferred premiums, and not for the purpose of attempting to keep the ratio the same as it would have been without considering them. If this were not the purpose, there would be no occasion to do anything but exclude due and deferred premiums from both sides of the balance sheet for tax purposes. (This is the government's alternative argument which will be discussed more in detail later.)

The proper approach is to solve the formula as stated by Congress. To do so an effort must be made to include those assets, and only those assets, Congress intended to have included and to include in the reserve all liabilities Congress intended to have included. No one argues that Congress did not intend the reserve on due and deferred premiums to be included.

## II. Government's Alternative Position

The government's alternative position is based on Treasury Regulation 1.801–4(f) which provides in part:

> In the event it is determined on the basis of the facts of a particular case that premiums deferred and uncollected and premiums due and unpaid are not properly * * * includible under assets (as defined in section 805(b)(4)) for the taxable year, appropriate reduction shall be made in the life insurance reserves. This reduction shall be made when the insurance company has calculated life insurance reserves on the assumption that the premiums on all policies are paid annually or that all premiums due on or prior to the date of the annual statement have been paid.

The government's position seems to be that if loading on due and deferred premiums is not included as an asset in the formula, gross due and deferred premiums should be removed from the asset side of the balance sheet and the net valuation premium should be removed from the reserve. It is based on the more conservative way in which due and deferred premiums could be treated according to generally accepted accounting principles. It recognizes

there is no legal entitlement to such premiums and excludes consideration of such contingent items. The method of accrual accounting does not seem appropriate to the facts here. It fails to take into consideration that state law requires the company to maintain a reserve on due and deferred premiums. A method of accounting which does not include such reserve would not accurately reflect the company's potential liability. *Standard Life & Acc. Ins. Co. v. Commissioner*, supra.

The Court does not believe regulation 1.801(4)(f) is intended to apply to this situation. In the Court's opinion, it would apply where no asset entry was made to counterbalance the inclusion of the net valuation premium in the reserve. All parties are agreed that the retaining of a reserve under such situation would not be proper. Here the gross due and deferred premiums are accrued as an asset. The Court has determined that the portion of the loading used in the insurance trade or business is not includable as an asset for the purposes of computing the current earnings rate.

The Court therefore holds that the portion of the loading on due and deferred premiums which, when received, will be used to defray the expenses of doing business as an insurance company, is an asset used in carrying on an insurance trade or business and is excludable from the asset factor of the section 805 formula for the calculation of current earnings rate. Any margin for profit included in the loading would not be used in the insurance business and should be included in the asset factor of the formula.

## III. Agents' Debit Balances

To attract prospective agents to the business of selling life insurance, the life insurance industry has established the practice of making advances to new agents and charging the advances against the agents' anticipated future commissions. These charges against future commissions are called "Agents' Debit Balances". The purpose of such advances is to provide funds to enable new agents to meet their ordinary

living expenses until their commission income is sufficient to support them.

Under the Bankers Life plans, if a new agent did not succeed in selling life insurance, he could terminate his agent status without any obligation to repay the advances made to him. However, the company had a right to offset any indebtedness due the company, including the agent's debit balances, against any amounts due such agent from the company. This right of offset was the only right which the company had to recover such advances. No effort was made to collect any debit balance other than by offset.

The federal income tax returns filed by plaintiff for the years in question included the *net* agents' debit balances as an asset of plaintiff for purposes of the earnings rate calculations required under section 805. In his audit of those returns, the District Director disallowed the agents' credit balances as an offset against the debit balances making the *gross* agents' debit balance an asset for purpose of calculating current earnings rate.

It was plaintiff's position on its claim for refund and is plaintiffs position now that *all* of such agents' debit balances should be excluded from assets in computing current earnings rate under the section 805 formula. Plaintiff asserts that Treasury Regulation 1.805–5(a)(4)(i) and (ii) are an unreasonably restrictive interpretation of Section 805(b)(4) of the Internal Revenue Code.

The Court has already decided that subsection (i) of Treasury Regulation 1.805–5(a)(4) is invalid as unduly restricting assets used to carry on an insurance business to tangible assets. However this does not decide whether agents' debit balances are *used* by the company in carrying on the insurance business.

The taxpayer argues it is difficult to conceive of an asset more clearly used in carrying on an insurance business than agents' debit balances and states that the asset is "used" to attract, recruit and maintain a viable force of life insurance agents in the field. The company is equating the word "used" with the phrase "arises from".

Actually, it is an asset in the nature of a receivable which results from the fact that money, which in some instances is recoverable by the company, has been advanced to its new agents. The advancements, not the resulting nonadmitted asset, are used to attract, recruit and maintain new insurance agents. The agents debit balances account itself is not used in the business. The advancement would accomplish the purpose as well, if not better, if the right of offset was abandoned and no such asset created.

All of the decided cases have held "agents' debit balances" is an asset of the insurance company for purposes of the earnings rate calculation under section 805. *Jefferson Standard Life Ins. Co. v. United States,* supra; *Southwestern Life Ins. Co. v. United States,* supra; *Franklin Life Ins. Co. v. United States,* 67–2 USTC ¶ 9515; *Western Nat'l. Life Ins. Co. v. Commissioner* (1968), 50 T.C. 285.

The Court finds these cases dispositive of this issue.

### IV. Mortgage Escrow Funds

Mortgage escrow funds are payments by mortgagors to plaintiff or its mortgage loan correspondents to provide a fund for the payment of real estate taxes, casualty insurance premiums, special assessments and mortgage insurance premiums when the same become due. A large portion of the funds involved here arose from VA or FHA loans which require payments into escrow funds. Most of the loans are made by plaintiff's mortgage loan correspondents.

Such funds are deposited by the mortgage loan correspondent to local non-interest bearing accounts. Checks are drawn to make the payments for which the escrow funds were created. From time to time, when it is determined that excess funds, not needed for escrow purposes, exist in the local accounts, plaintiff orders them withdrawn from the local accounts and deposited in one of its many non-interest bearing general bank accounts throughout the coun-

try. Accurate records are kept of each individual loan and funds are returned to the mortgage loan correspondent when needed for escrow purposes.

The government claims the mortgage escrow funds reported in the taxpayer's annual statement should not be excluded from "assets" in determining its taxable investment income.

Every decided case on this issue has held that such escrow funds are not assets of the life insurance company, contrary to the governments position. *Liberty Nat'l. Life Ins. Co. v. Commissioner* (5th Cir., 1971), 463 F.2d 1027; *National Life Ins. Co. v. United States* (1975), 75–2 USTC ¶ 9579; *Franklin Life Ins. Co. v. U. S. (S.D.Ill., 1967), 19 AFTR2d 1734; Jefferson Standard Life Ins. Co.* (M.D.N.C., 1967), 272 F.Supp. 97; *Bankers Union Life Ins. Co. v. Commissioner*, supra; *Southwestern Life Ins. Co. v. United States*, supra.

The government recognizes these authorities but claims the factual situation here supports a contrary result. It relies on the following language in *Liberty National*:

> Unless it could be shown that the escrow funds actually were used for investment or that they had indirectly served to permit Liberty to invest more assets than it ordinarily could, we cannot see how it can be said that the escrow funds were assets of the company. In our view the only type of benefit which Liberty might receive from the escrow funds, which in turn would result in our holding that the funds were assets within the meaning of Section 805(b)(4), would be the freeing up of other assets for investment. Because we find no evidence indicating that such benefit inured to Liberty, we hold the district courts' contrary finding to be clearly erroneous.
>
> *Liberty Nat'l. Life Ins. Co. v. Commissioner*, supra, at 1031.

In spite of the governments claims to the contrary, the Court finds that the evidence does not show an encroachment into the escrow funds by Bankers Life and consequently there was no freeing up of other assets for investment. The year end statements show there was a substantial sum in bank accounts in excess of the escrow funds. The smallest excess was over $2.6 million in 1958. The largest over $7 million in 1961. There is no evidence that $2.6 million was not adequate working capital.

The uncontradicted evidence is that the escrow funds did not contribute significantly to the case generation and the finance committee did not take escrow funds into consideration in determining investments. The Court does not consider the ordering of funds transferred from mortgage correspondents' local accounts to plaintiff's general accounts a significant factor. The uncontradicted evidence is that this was done to preserve the safety of the funds for which plaintiff was responsible.

While it would be possible for an insurance company to treat mortgage escrow funds in such a manner that they could be considered assets of the company for computing current earnings rate for income tax purposes, the evidence in this case will not warrant such a conclusion.

## V. SUMMARY

The Court holds that all of the loading on due and deferred premiums, except that portion attributable to profit, is an asset used by the company in carrying on an insurance trade or business within the meaning of 26 U.S.C. § 805(b)(4) and is excludable from assets in calculating the current earnings rate. The Court recognizes that neither party made an issue of the profit element of the loading. The record does not contain any evidence indicating whether this element can be identified and separated out. It may be that further hearing will be required to ascertain the specific amount of the loading attributable to profit in this particular case. With that exception, the parties should be able to agree on the amount of refund to which plaintiff is entitled as a result of this decision.

The Court holds that agents' debit balances is not an asset used by the company

in carrying on an insurance trade or business and is to be included as an asset in calculating current earnings rate under the § 805 formula.

The Court holds that mortgage escrow funds are not an asset of the company under the evidence presented here and are excludable from assets in calculating the current earnings rate under the § 805 formula.

IT IS THEREFORE ORDERED that attorneys for the parties shall determine the amount of refund due plaintiff in accordance with this opinion, or advise the court, if further hearing is needed to implement the decision herein reached. If an agreement can be reached, plaintiff shall prepare, subject to the government's approval, a judgment entry in accordance herewith.