BANKERS LIFE COMPANY, Appellee,

v.

UNITED STATES of America,
Appellant.

BANKERS LIFE COMPANY, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 76–1787, 76–1840.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1978.

Decided June 12, 1978.

On Rehearing En Banc Nov. 3, 1978.

Stephen M. Gelber, Atty., Tax Div., Dept. of Justice, Washington, D.C., Roxanne B. Conlin, (argued), U. S. Atty., Des Moines, Iowa, M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Gary R. Allen, Washington, D.C., on brief, for appellant.

Walter R. Brown, of Swift, Brown & Winick, Des Moines, Iowa (argued), Bruce B. Graves, David C. Craig and William C. Brown and Paul E. Brown, and Gregg R. Narber, Des Moines, Iowa, on brief, for appellee.

Before HEANEY and BRIGHT, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

This action for refund of taxes raises several questions relating to the interpretation of the Life Insurance Company Income Tax Act of 1959, 26 U.S.C. §§ 801–820 (1970). The district court,[1] in an opinion published at 412 F.Supp. 62 (S.D.Iowa 1976), ruled in favor of the Government on some issues and in favor of the Bankers Life Company on others. Both parties have appealed. We affirm in part and reverse in part.

I. *Background.*

The district court opinion relates in detail the background of this case and the principles of taxation of life insurance companies as they apply to the essentially undisputed facts before us. We therefore need provide only a brief discussion of the essential facts.

The issues in this case focus on whether certain items should be considered "assets" of Bankers Life for purposes of sections 804 and 805 (commonly called Phase I) of the Life Insurance Company Income Tax Act. Section 805(b)(4) defines "assets" as follows:

> (4) Assets.—For purposes of this part, the term "assets" means all assets of the company (including nonadmitted assets), other than real and personal property (excluding money) used by it in carrying on an insurance trade or business.

Phase I of the Act taxes a life insurance company's investment income, subject to an exclusion for the portion of the income attributable to its reserves for paying death benefits to policyholders. The amount of the exclusion is determined by the following formula:

$$\frac{\text{Reserves}}{\text{Assets}} \times \text{Investment Income} = \text{Exclusion}$$

A taxpayer generally seeks to omit items in dispute from the "assets" element of this formula. Decreasing the denominator increases the size of the fraction and, therefore, the size of the exclusion. The Government, on the other hand, generally seeks to include disputed items in the asset element, thereby decreasing the fraction, decreasing the exclusion, and increasing taxable income.

II. *Agents' Debit Balances.*

Bankers Life, like most life insurance companies, makes advances to new agents and charges the advances against future commissions. The charges against future commissions are known as "agents' debit balances." Bankers Life argues that agents' debit balances constitute property "used by it in carrying on an insurance trade or business," and therefore are expressly excluded from "assets" under section 805(b)(4). The district court rejected this reasoning with the following analysis:

> Actually, it is an asset in the nature of a receivable which results from the fact

---

* TALBOT SMITH, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The Honorable William C. Stuart, Chief Judge, United States District Court for the Southern District of Iowa.

that money, which in some instances is recoverable by the company, has been advanced to its new agents. The advancements, not the resulting nonadmitted asset, are used to attract, recruit and maintain new insurance agents. The agents debit balances account itself is not used in the business. The advancement would accomplish the purpose as well, if not better, if the right of offset was abandoned and no such asset created.

All of the decided cases have held "agents' debit balances" is an asset of the insurance company for purposes of the earnings rate calculation under section 805. [412 F.Supp. at 71.]

We adopt the district court's reasoning and affirm on this issue.

### III. *Mortgage Escrow Funds.*

Bankers Life holds substantial investments in real estate mortgages, most of which are VA or FHA insured. Under VA and FHA requirements, the mortgagors pay projected real estate taxes, special assessments, and insurance premiums into escrow funds held in noninterest bearing accounts in local banks. From time to time, Bankers Life temporarily transfers funds not immediately needed for escrow purposes to one of its noninterest bearing general accounts. The escrow funds thereby become commingled with other funds in the general accounts.

Under the VA mortgage instrument typical of that used by Bankers Life, the mortgagor agrees to pay the escrow funds "to the Mortgagee, as trustee." Under the typical FHA instrument, the mortgagor agrees to pay the escrow funds to the mortgagee, "such sums to be held by Mortgagee in trust." Bankers Life argues that this language requires it, as mortgagee, to hold the funds "in trust." As a result, the escrow funds, like the company's reserves, belong to someone else (the mortgagors), not the company, and therefore should not be considered "assets" of the company.

The district court agreed. Relying on a Fifth Circuit case, *Liberty National Life Insurance Co. v. United States*, 463 F.2d 1027 (5th Cir. 1972), the court found that Bankers Life held the escrow funds "in trust" and derived no benefit from them. The court therefore held that the escrow funds are not "assets" of the company for purposes of section 805(b)(4). 412 F.Supp. at 72.

Subsequently, the Fifth Circuit decided *Southwestern Life Insurance Co. v. United States*, 560 F.2d 627 (1977). In that case it found the mortgage escrow funds to be "assets" for purposes of section 805(b)(4) because no express trust had been created and the company had exerted control over the funds in a manner inconsistent with a trust relationship. *Id.* at 634.

We adopt the reasoning of the Fifth Circuit in *Southwestern Life* and apply it to this case. Nowhere in the mortgage instruments does the mortgagee undertake an express obligation to act as trustee. Moreover, the escrow funds in this case have none of the attributes of property held in trust. Bankers Life has not used the funds solely for the benefit of the mortgagors, *see Restatement (Second) of Trusts* § 170(1) (1959); it has commingled the escrow funds with its own, *see id.* § 179; and it has not made the funds productive, *see id.* § 181. Bankers Life has managed the funds as its own, not as the property of the mortgagors. Bankers Life's receipt of these funds is, of course, subject to its contractual obligations to pay taxes, assessments, and insurance premiums on the mortgaged property, but the relationship between the parties is, in our view, one of debtor-creditor, not trustee-beneficiary. We therefore hold that in this case the mortgage escrow funds constitute "assets" for the purposes of section 805(b)(4).

### IV. *Due and Deferred Premiums.*

The term "due and deferred premiums" refers to premiums that are due but unpaid at the end of the calendar year. Insurance companies carry such premiums on their books as assets. Bankers Life argues that the "loading" portion of the premiums, that is, the portion representing the company's costs and profits, constitutes an asset "used

by it in carrying on an insurance trade or business" and therefore should be excluded from its assets for purposes of section 805(b)(4). The district court agreed in substance, but held that the profit element should be considered an asset:

Theoretically, and in all probability actually, the loading portion of due and deferred premiums includes some margin above actual expenses for profit. This margin would not be used in carrying on the insurance business and should not be excludable from assets for that reason. The amount of this margin should be identified and included as an asset for the computation of current earnings rate. [412 F.Supp. at 69.]

Subsequently, the Supreme Court decided in *Commissioner of Internal Revenue v. Standard Life & Accident Insurance Company*, 433 U.S. 148, 97 S.Ct. 2523, 53 L.Ed.2d 653 (1977), that the entire loading portion should be excluded.

Both parties agree that *Standard Life* is dispositive of this issue. The Government, however, argues that we cannot reverse the district court because this issue has not properly been presented to us on appeal by Bankers Life.[2] We need not resolve this question. Our disposition of the other issues requires that we remand in any event. The district court possesses ample judicial power to modify its judgment to conform with *Standard Life* before entering a final judgment.

We affirm in part, reverse in part, and remand for entry of judgment in conformity with this opinion.

Each party shall pay its own costs.

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY and McMILLIAN, Circuit Judges, *En Banc*.

## ON REHEARING EN BANC

### PER CURIAM.

This case was originally submitted to a panel of this court on April 12, 1978. The judgment of the District Court was affirmed in part and reversed in part by the panel opinion filed June 12, 1978. Thereafter, the motion of Bankers Life Company for rehearing *en banc* on the issue of the tax consequences of certain mortgage escrow funds was granted by order of the court dated July 14, 1978.

Part III of the panel opinion is now vacated. On rehearing *en banc* the judgment of the District Court on the issue of the tax consequences of mortgage escrow funds is affirmed by an equally divided court. Judges Gibson, Ross, Stephenson, and Henley vote to affirm the District Court. Judges Lay, Heaney, Bright, and McMillian vote to reverse.

In conformity with the portions of the panel opinion not vacated and with this opinion, the judgment of the District Court is affirmed in part and remanded for reconsideration of the question of due and deferred premiums.

---

2. The issue was covered in the Government's notice of appeal. After *Standard Life* was de-cided, however, the Government decided not to pursue the issue.